## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JENNIFER JOHNSON,

     **Plaintiff,**

     **v.**

                                **Civil Action No. 02-1816 (JMF)**

**WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY AND
RICHARD A. WHITE, in his capacity as
CEO,**

     **Defendants.**

## MEMORANDUM OPINION

This case was referred to me for all purposes including trial by Judge Kessler pursuant to LcvR 73.1(a). Currently pending and ready for resolution are three motions: 1) <u>Defendants' Motion for Summary Judgment</u> ("MSJ"), 2) <u>Defendants' Motion in Limine [sic] and Motion to Strike Unemployment Compensation Decision</u> ("Defs. MIL"), and 3) <u>Plaintiff's Motion in Limine [sic]</u> ("Plains. MIL"). For the reasons stated below, <u>Defendants' Motion for Summary Judgment</u> will be granted, rendering the two other motions moot.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.    <u>Legal Standard for Summary Judgement</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As

determined by the substantive law, material facts are those that affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

"Courts evaluating motions for summary judgment in discrimination cases are advised to proceed with additional caution and apply a high degree of scrutiny." Jones v. District of Columbia, No. CIV.A.00-2140, 2004 WL 261421, at *6 (D.D.C. Nov. 8, 2004).  This does not, however, relieve the parties of their respective burdens.  The burden of establishing that there is no genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The non-moving or adverse party also has a burden and "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

II.   Discussion

    A.   Facts

There is no genuine issue as to the following material facts:

    1.   Plaintiff, Jennifer Johnson, is a graduate of Howard University Law School.

    2.   Plaintiff began working for defendants on August 24, 1998 as an EEO Investigator and Diversity Specialist in the Office of Civil Rights.

    3.   On December 15, 1997, plaintiff signed a Certification Statement indicating her receipt and review of WMATA standards of conduct. MSJ, Att. 3.

    4.   Some time after October 13, 1999, plaintiff signed a Confidentiality Statement that governed all employees of WMATA's Department of Administrative Services, the Office of Human Resource Management and

Planning, the Office of Employee and Labor Relations, and the Office of Civil Rights. Plaintiff's Memorandum in Opposition to the Motion for Summary Judgment ("Opposition to MSJ") at Exhibit 2.

5.    On August 8, 2000, plaintiff received a letter of reprimand from Cynthia Myers, Director of Civil Rights at WMATA, which stated that plaintiff was being reprimanded for having removed two case files from the Office of Civil Rights. MSJ, Att. 6.

6.    On November 2, 2000, plaintiff received a memorandum from Angela Martin regarding a previously issued memorandum of warning dated October 24, 2000. MSJ, Att. 7.  The subject of the November memorandum was an incident in which plaintiff alleged she was physically bumped by another employee and also treated rudely by that same employee.  The memorandum stated that the alleged bumping incident did not occur as described by plaintiff and that the other employee had not violated any WMATA policy.  The memorandum further warned plaintiff that employees could be disciplined for filing false or nuisance complaints against co-workers.

7.    On January 26, 2001, plaintiff received a letter from Myers informing plaintiff that her employment with WMATA would be terminated as of February 9, 2001 and listing the reasons for her termination as "documented insubordination, disruptive behavior, and unsatisfactory job performance." MSJ, Att. 8.

3

8.      On or about February 14, 2001, plaintiff filed an EEO complaint alleging

that she had been discriminated against by WMATA.  Specifically, plaintiff

alleged that she had been discriminated against because of her gender and

religion by two former supervisors, Horatio A. Lanier and R. Hamisi

Ingram. Opposition to MSJ at 2.

9.      On April 17, 2001, plaintiff received a letter from Leona Agouridis,

Assistant General Manager for Communications at WMATA, indicating

that plaintiff's appeal of her most recent termination had been denied. MSJ,

Att. 10.

10.     On May 30, 2001, Agouridis sent Gail Charles, Assistant General Manager

of Administrative Services, a memorandum stating that, while she

previously supported plaintiff's first termination, she felt that there were

extenuating circumstances that warranted her rehiring. MSJ, Att. 11.

11.     On June 11, 2001, plaintiff received a letter from Katrina Wiggins, Director

of the Office of Human Resource Management and Planning at WMATA.

MSJ, Att. 13.  In the letter, Wiggins offered plaintiff a position as an

HROP Administrative Assistant.  On June 19, 2001, plaintiff and WMATA

entered into a settlement agreement. MSJ, Att. 12.  On June 25, 2001,

plaintiff was rehired by WMATA as an Administrative Assistant.

12.     On or about September 12-14, 2001,[1] plaintiff met with Ruth Parks, an

---

[1] In her September 17, 2001 declaration, Parks claims that the meeting with plaintiff took place on September 14, 2001. MSJ, Att. 17.  However, in plaintiff's EEO claim dated October 12, 2001 and in her affidavit of the same date, plaintiff states that her conversation with Parks

employee relations officer at WMATA.  Plaintiff told Parks that she had looked at the personnel files of Horatio A. Lanier and R. Hamisi Ingram.

13.     On September 20, 2001, plaintiff was again terminated by WMATA.

14.     On October 12, 2001, plaintiff filed a second EEO complaint alleging that she had been retaliated against because she "opposed discriminatory practices and filed a discrimination complaint with the EEOC in March 2001."

B.     Legal Standard for Claims of Retaliation Under Title VII

Pursuant to the burden-shifting analysis first introduced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), plaintiff must first make out a *prima facie* case of retaliation. Coles v. Perry, 271 F. Supp. 2d 157, 160 (D.D.C. 2003) (citation omitted).  In order to establish a *prima facie* case of retaliation under Title VII, plaintiff must show the following: "'1) that she engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two.'" Brown v. Brody, 199 F.3d 446, 452-53 (D.C.Cir. 1999) (citations omitted).  If plaintiff succeeds in making out a *prima facie* case, there then exists a rebuttable presumption of retaliation and the burden then shifts to defendants to articulate a legitimate non-retaliatory reason for their actions. McGowan v. Billington, 281 F. Supp. 2d 238, 245 (D.D.C. 2003) (citations omitted).  If defendants succeed in rebutting the presumption, the burden once again shifts to plaintiff to demonstrate that the proffered reason was pretextual. Id.  Ultimately, plaintiff has the burden of proving by a preponderance of the evidence that she was retaliated against. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)

occurred on September 12, 2001. MSJ, Atts. 9, 12.

(citations omitted).

    C.    <u>Summary Judgment Must Be Granted As To Plaintiff's Claim That She Was Fired In Retaliation for Filing an EEO Claim</u>

Defendants obviously do not deny that the filing of an EEO claim against one's employer is protected activity but insist that plaintiff cannot even make out a *prima facie* case that her firing was in retaliation for her filing of an EEO claim seven months earlier.

Plaintiff has not presented any direct evidence that her firing in September of 2001 was done in retaliation for her having filed an EEO claim seven months earlier. She must therefore rely on the circumstantial evidence of the temporal proximity of her filing the complaint and her firing. Plaintiff's doing so is problematic, to put it mildly. <u>See</u> Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) ("[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'"). In that case the Supreme Court cited with approval cases that held that three and four month delays between the protected activity and the adverse action were not causally connected. <u>Id.</u>[2]

_____

[2] <u>See</u> also Wilson v. SunTrust Bank, No. CIV.A.03-7194, 2004 WL 2958303, at *1 (D.C. Cir. Dec. 21, 2004) (fifteen months deemed two long a period of time to support an inference of temporal proximity between protected activity and adverse action); Regan v. Grill Concepts D.C., Inc., 338 F. Supp. 2d 131, 138 (D.D.C. 2004) (causation inferred where temporal proximity between protected activity and adverse action was three days); Brodetski v. Duffey, 199 F.R.D. 14, 20 (D.D.C. 2001) ("courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside a year in length"). <u>See</u> also Jones v. District of Columbia, No. CIV.A.00-2140, 2004 WL 2614241, at *21 (D.D.C. Nov. 8, 2004) (holding that even where there exists temporal proximity between the protected activity and adverse action, this is not sufficient in all cases to establish causation: "The Court is mindful of the logical axiom that correlation does not equate to causation in all cases–that is, simply because two events occur proximately to one another in time, even when such proximity of events appears to

Furthermore, plaintiff's first EEO claim was made in February of 2001, less than one month after plaintiff was first terminated from WMATA.  WMATA fired plaintiff in a January 26, 2001 letter from Cynthia Myers, Director of the Office of Civil Rights.  But, while her EEO claim was still pending, plaintiff received another job offer from WMATA.  In a June 11, 2001 letter from Katrina Wiggins, Director of the Office of Human Resource Management and Planning, plaintiff was offered the position of HROP Administrative Assistant.  Eight days later, on June 19, 2001, plaintiff and WMATA entered into a settlement agreement relating to her outstanding EEO claim and on June 25, 2001, plaintiff was formally rehired by WMATA as an Administrative Assistant.  In addition, in the May 30, 2001 memorandum from Leona Agouridis to Gail Charles regarding the rehiring of plaintiff, Agouridis indicated that, while she was originally in favor of terminating plaintiff, she now felt that there were extenuating circumstances and that "she should be granted a second chance."  Thus, plaintiff's second termination occurred seven months after the filing of her EEO complaint and after she had been re-hired and given a 'second chance."  Thus, plaintiff asks the finder to fact to conclude that WMATA's retaliatory scheme mandated that plaintiff be rehired so that she could be refired.

In her opposition to defendants' motion for summary judgment, plaintiff does not answer defendants' argument that she cannot make out a *prima facie* case that her firing was motivated by a desire to retaliate against her for filing an EEO claim seven months earlier.

Furthermore, defendants have articulated a legitimate non-retaliatory reason for its firing of plaintiff: plaintiff's having looked at the evaluation forms of other employees.  Plaintiff must

_____

be a statistically regular phenomenon, there is no logical basis to conclude, without more, that one event is the cause of the other.").

therefore produce evidence upon which a reasonable person could conclude that this reason is a

pretext.  She produces none whatsoever.  Indeed, in her opposition, she does not even answer the

defendants' arguments that she cannot establish either a *prima facie* case or produce evidence that

the reason for her firing was a pretext. Hence, summary judgment must be granted as  to her claim

that her termination was based on retaliation for her filing of an EEO claim seven months earlier.

      D.    Summary Judgment Must Be Granted As To Plaintiff's Claim That She Was Fired
             for Engaging In Protected Activity

Plaintiff also seems to be predicating a Title VII violation on her being fired for discussing

what she found in the evaluations of two other WMATA employees.  Thus, as plaintiff frames it,

since she did not violate WMATA's confidential policy, her case survives defendants' motion:

> Ms. Johnson obtained the information about Ingram and Lanier in
> the course of performing her duties, she treated the information in a
> private and confidential manner by communicating it only to
> Ombudsman Parks in her capacity as the company's Ombudsman,
> and she did not disclose the information to anyone else . . . a
> reasonable juror could conclude that Ms. Johnson acted in
> accordance with all of defendant's policies.

Opposition to MSJ at 11.

But, this case is not an employment contract case where the court is determining whether

or not plaintiff was fired for good cause.  This is a Title VII case and plaintiff has to show that her

termination was in retaliation for either opposing an employer's discriminatory practices or for

participating in an investigation or proceeding under Title VII.  The Title VII retaliation provision

provides, in pertinent part, as follows:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees ... because he has
> opposed any practice made an unlawful employment practice ... or
> because he has ... assisted, or participated ... in any manner in an

8

investigation, proceeding or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

The statute contains a participation and an opposition clause.  Under the participation clause, an employee may not be retaliated against for assisting or participating in an investigation, proceeding, or hearing conducted pursuant to a complaint predicated on Title VII's ban on various forms of discrimination in the work place.  Under the opposition clause, an employee must be permitted to make formal and informal complaints about practices claimed to be discriminatory.

In this case, plaintiff was fired for revealing to Parks that she had looked at the performance evaluations of Ingram and Lanier in violation of a policy, of which she was aware, that prohibited her from doing so.

First, she was certainly not fired for "participating" in a Title VII investigation, proceeding, or hearing when she spoke to Parks.  Her own EEO claim had been disposed of months ago by a settlement and she cannot possibly claim that she was collecting evidence to substantiate the claim of discrimination she had pressed and then settled.  Her case is therefore nothing like the cases to which she compares it in which courts have had to grapple with the propriety under Title VII of an employer disciplining an employee who has collected documents to be used to press a Title VII claim.  Compare Kempcke v. Monsanto Co., 132 F.3d 442 (8th Cir. 1998) with O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 762-64 (9th Cir. 1966). See Laughlin v. Metropolitan Washington Airports Authority, 952 F. Supp. 1129 (E.D. Va. 1997).

Additionally, her opening the files containing the evaluations cannot possibly be justified as any form of participating in a Title VII proceeding no matter how much one stretches the word "participating." This is so even if one attributed to her some desire to see whether or not WMATA had complied with the settlement agreement. She cannot and does not claim that, before she opened them, she had reason to believe that the evaluation forms contained evidence that there had not been compliance with her settlement agreement and it was appropriate for her to look for that evidence to prove a failure to comply with the settlement. To condone her doing so as "protected" activity would make the protection of the activity a function of what it turned up rather than the propriety of the action in the first place.

As to the opposition clause, it protects an employee who complains to her employer about discrimination.[3]

A superficial analysis would say that the conversation with Parks was a "protected activity." But, plaintiff was fired for reviewing documents she shouldn't have. That the motivation for her firing–her looking at the forms–came into existence because it was first revealed in a conversation that might be protected activity does not mean that any disclosure made during that conversation is also protected activity and may not serve as a basis for firing an

---

[3] E.g. Paquin v. Fed. Nat'l Mortgage Ass'n, 119 F.3d. 23 (1997); Velikonja v. Mueller, No. CIV.A.03-0832, 2004 WL 3021397 (D.D.C. Dec. 21, 2004); Booker v. Fed. Reserve, Nos. CIV.A.01-2290-91, 2003 WL 1213148 (S.D.N.Y. March 17, 2003); Little v. NBC, 210 F. Sup 2d 330, 384 (S.D.N.Y. 2002). "[P]rotected activity often takes the form of filing a lawsuit or formal complaint with an agency." See Kotcher v. Rosa and Sullivan Appliance Ctr., 957 F.2d 59, 65 (2d Cir.1992). However, "it may also take the form of less formal protests, such as making complaints to management, writing critical letters to customers, or expressing support of co workers who have filed charges." Del Castillo v. Pathmark Stores, 941 F.Supp. 437, 438-39 (S.D.N.Y.1996).

employee without violating Title VII's retaliation clause.  Congress certainly intended employees

to be free to complain about discrimination in conversations with superiors or persons appointed

to mediate, conciliate, or otherwise listen to those complaints.  It is irrational, however, to state

that Congress also intended that disclosures of improper behavior during those conversations

could never serve as grounds for employee discipline no matter how outrageous or inappropriate

the employee's behavior.  It is one thing to hold that an employee's telling a detective that he

killed his superior may not be introduced into evidence if the statement was taken in violation of

the employee's right not to incriminate himself.  It is quite another to say that the same statement

may not be grounds for firing that employee because, during the same conversation, the employee

disclosed to a superior that he killed another superior because he believed his victim was

discriminating him.

The same result can be reached by an analogous analysis.  Even if the conversation with

Parks was protected by Title VII, the disclosure plaintiff made during the conversation provided

defendants with a legitimate reason for firing the plaintiff.  Plaintiff is therefore obliged to show

that the reason was a pretext.  She has tendered no evidence upon which a reasonable person

could predicate that conclusion and therefore the defendants are entitled to summary judgment.

## CONCLUSION

An Order accompanies this Memorandum Opinion.

_____

JOHN M. FACCIOLA

Date:                                    UNITED STATES MAGISTRATE JUDGE